655 A.2d 1

Leon C. FEARNOW

v.

The CHESAPEAKE & POTOMAC TELEPHONE
COMPANY OF MARYLAND, et al.

No. 495, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Jan. 11, 1995.

Motion for Reconsideration March 30, 1995.

2

4

6

8

10

12

Patrick A. O'Doherty, Baltimore, and John J. Hirsch, Pasadena (Amy J. Muffolett, Baltimore, on the brief), for appellant.

Anthony W. Kraus (James P. Garland and Miles & Stockbridge, on the brief), Baltimore, for appellees.

Argued before ALPERT, HARRELL and HOLLANDER, JJ.

HARRELL, Judge.

Appellant, Leon C. Fearnow, appeals from a judgment entered by the Circuit Court for Washington County granting the motion for summary judgment of appellee, Chesapeake & Potomac Telephone Company of Maryland (C & P), as to liability under the doctrine of respondeat superior. Appellant also appeals from a judgment entered upon a jury verdict of the Circuit Court for Washington County (Moylan, J. presiding), finding appellee, Donald K. Wood, not liable, under the

Maryland Wiretapping and Electronic Surveillance Act (Maryland Wiretap Act or the Act), Md.Code Ann., Cts. & Jud.Proc. § 10–401 *et seq.* (1989 Replacement Volume & 1994 Supp.), for the wilful interception of appellant's telephone communications.

## *ISSUES*

I. Did the trial court err in refusing to give the appellant's instruction no. 21 which was a verdict directing instruction?

II. Did the trial court err in its instructions to the jury regarding the wiretap statute?

III. Did the trial court err in refusing to instruct the jury as follows:

 A. A person is presumed to know the law (plaintiff's proposed instruction nos. 16 and 17);

 B. Ownership of the telephone equipment has no bearing on whether or not consent exists under Maryland's wiretap act for a lawful interception (plaintiff's proposed instruction no. 22);

 C. There is no legally sufficient evidence that Fearnow's phone was consensually monitored under § 10–402(c)(2) of Maryland's wiretap act (plaintiff's proposed instruction no. 15);

 D. Maryland's wiretap act required a court order prior to the interception of Fearnow's phone (plaintiff's proposed instruction no. 11)?

IV. Did the trial court err in quashing certain trial subpoenas and sustaining objections to the use of interrogatory answers by Wood and C & P?

V. Did the trial court err (1) in granting summary judgment in favor of the C & P and (2) finding that counsel for both C & P and Wood did not have a conflict of interest in filing said motion on behalf of C & P?

VI. Did the trial court err in granting summary judgment against the plaintiff on the issue of punitive damages by requiring proof of actual malice.

VII. Did the trial court err in granting summary judgment against Fearnow on his claim for damages for reputational injury and resultant emotional distress?

VIII. Did the trial court err in denying the plaintiff additional discovery while permitting additional discovery to be reopened by the defendants?

IX. Did the trial court err in ruling as a matter of law that no conspiracy existed?

X. Did the trial court show partiality toward the defendants, Donald Wood and C & P?[1]

---

1. Appellant also raised the following issues in his reply brief: (1) the jury should have been instructed that appellees could be civilly liable to appellant under the Maryland Wiretap Act for "endeavoring to intercept" his communications, even in the absence of proof that any of his communications actually were "intercepted, disclosed or used" by appellees; and (2) the trial court's refusal to instruct the jury that civil liability could be based on "endeavoring to intercept" indicated partiality toward appellees. Neither of these arguments, however, were raised in appellant's initial brief. As explained in *Federal Land Bank, Inc. v. Esham*, 43 Md.App. 446, 459, 406 A.2d 928 (1979):

> The function of a reply brief is limited. The appellant has the opportunity and duty to use the opening salvo of his original brief to state and argue clearly each point of his appeal. We think that the reply brief must be limited to responding to the points and issues raised in the appellee's brief. . . . To allow new issues or claims to be injected into the appeal by a reply brief would work a fundamental injustice upon the appellee, who would then have no opportunity to respond in writing to the new questions raised by the appellant.

A fair reading of the briefs submitted by appellant indicates that appellant did more in his reply brief than reply to appellees' brief. Indeed, as appellees suggest in their Motion to Strike Arguments First Raised in Appellant's Reply Brief Regarding Civil Liability for "Endeavoring to Intercept" Without Proof of Actual Interception: "While [appellant] unquestionably had the right to respond to appellees' contention that he had failed to prove 'interception,' he cannot properly do so by raising a new attack on the 'interception' requirement in the jury instructions, which he failed to raise as an original appeal point." We agree with appellees that the two issues stated *supra* were raised for the first time by appellant in his reply brief, and therefore the motion to strike those arguments on pages six and thirteen of the reply brief pertaining to such issues is granted.

As we shall reverse the judgment of the circuit court based on one of the sub-arguments within issue II, we do not reach all of the remaining issues presented by appellant for our review. Pursuant to Md.Rule 8–131(a),[2] however, we will reach, for the benefit of the trial court, certain of the other issues.

## FACTS [3]

In 1983, appellant was a police officer with the Hagerstown Police Department. By the fall of 1983, there was considerable suspicion that someone in the Hagerstown Police Department was "leaking" police information concerning ongoing gambling investigations. In an attempt to identify these "leaks," Clinton E. Mowen, chief of the Hagerstown Police Department, requested that a wiretap be placed on appellant's telephone extension at police headquarters. Specifically, Chief Mowen ordered Corporal John E. Ryder, Sr. and Lieutenant Nelson S. Dunahugh "to tap Leon Fearnow's phone." [4] Notwithstanding Ryder's plea that this was "illegal as hell," Chief Mowen commanded the officers to proceed with the wiretap. Ryder attempted to locate appellant's extension line

---

2. Maryland Rule 8–131(a) provides:

(a) **Generally.**—The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

3. As we recount many of the facts of this case based on Wood's testimony at trial, we note any conflicts with that testimony, as appropriate, by footnote.

4. Although Ryder's testimony at trial indicates that he and Dunahugh were the only persons present when Chief Mowen requested a wiretap be placed on appellant's telephone extension, Detective Charles I. Kauffman testified that he was present at a meeting with Chief Mowen, Detective Baker, Ryder, and Dunahugh at which Chief Mowen "wanted . . . to check on the phone system to the desk phone on Leon's desk in his office."

on the telephone terminal board of the police headquarters, but lacked the technical expertise to do so.

Soon thereafter, Ryder telephoned Wood [5] at home "sometime between six and nine o'clock in the evening" and requested that he come to the police building.[6] Ryder explained only that there was a problem at police headquarters. Wood was not told what the problem was or why his assistance was requested.[7] Wood stated that he would be there "within the hour."

When Wood arrived at police headquarters, he was met by Ryder and, shortly thereafter, Chief Mowen. He was asked to look at the police headquarters' telephone terminal board in the basement and identify the binding posts (wire terminations) associated with an internal extension number.[8] Wood did not inquire into the police officers' authorization for their

---

**5.** Wood was, at that time, a Supervisor of Outside Construction for C & P in the Hagerstown area.

**6.** Ryder testified that earlier that day he had visited Wood at the C & P building in Hagerstown, Maryland.

**7.** Ryder testified that he told Wood "we had a problem [at police headquarters], the Chief has a problem that he needed to get something done up there and wondered if he could come up and help us and I advised him it was a wiretap."

**8.** Wood testified that he was not told the location of the extension phone associated with the specified binding posts, or why the police officers wanted to identify those particular binding posts. Allegedly unknown to Wood, the specified binding posts were for an extension phone located in the Traffic Division cubicle and used by appellant.

Ryder, on the other hand, testified that he did identify the binding post to be wiretapped as Fearnow's:

[COUNSEL FOR APPELLANT]: Did you tell Wood whose phone you wanted tapped?
[RYDER]: I think when he come in there ... I can't remember whether it was there at his office or when he got to headquarters if that was the case.
[COUNSEL FOR APPELLANT]: One of those ...
[RYDER]: One of those two places.
[COUNSEL FOR APPELLANT]: One of those two places, did you tell him that you wanted to tap Fearnow's phone?
[RYDER]: Yes.

actions, but testified that because the terminal board and internal wiring were the property of the Hagerstown Police Department, "it has all the right in the world to go down and make any changes on [Chief Mowen's] telephone equipment that he would elect to do so." Wood also testified that he never saw a court order authorizing the proposed interception. Moreover, he testified that "[t]he thought never really crossed my mind of a need for a court order."

When Wood was unable to identify the specified binding posts on the terminal board in the basement of the building, he, Ryder, and Mowen went to a second, redundant terminal board on the third floor of the police building where the binding posts were identified by the extension number written next to them. Once the particular extension number was located, "Ryder produced a tape recorder from a paper bag that he had been carrying and proceeded to hook the tape recorder to the binding post." [9] When the tape recorder was attached, Ryder concealed it above the ductwork and turned on the recorder.[10] Almost immediately thereafter, Wood left the police building alone and heard nothing further about the incident until approximately three years later when he was questioned by a state police investigator.

On 15 October 1987, appellant filed a two-count Complaint in the Circuit Court for Washington County against C & P, Wood, Mowen, Dunahugh, Ryder, Kauffman, and Baker, alleging invasion of privacy and violation of the Maryland Wiretap Act. On 26 February 1988, the circuit court granted the defendants' motion to dismiss, with leave to amend within

---

9. Ryder testified, however, that Wood "hooked up" the tape recorder to the binding post.

10. To operate as an interception device, a "black box" must be attached to the recorder. According to Wood, the recorder attached by Ryder in Wood's presence did not have a "black box" attached to it. Ryder did, however, eventually obtain a "black box" from an acquaintance in a military security position that was attached to the recording device placed on the terminal board in the basement. There was no "black box" placed on the third floor where Wood had identified the binding posts.

thirty days. On 24 March 1988, appellant filed a four-count Amended Complaint alleging, *inter alia,* invasion of privacy (Count I), portrayal in false light (Count II), civil conspiracy (Count III), and violation of the Maryland Wiretap Act (Count IV). Defendants' motion to dismiss was granted as to Counts I and II [11] and denied as to Counts III and IV. In October 1989, appellant voluntarily dismissed Count III, civil conspiracy, with prejudice.[12]

On 31 October 1989, Wood and C & P moved for summary judgment on the remaining wiretap count, arguing that there was no evidence that Wood acted "wilfully" so as to violate the Maryland Wiretap Act. Therefore, argued C & P, it could not be liable "because the doctrine of *respondeat superior* alone is incapable of establishing liability against C & P under the [Maryland Wiretap Act]." In the alternative, C & P argued that it "is entitled to summary judgment because Wood could not have been acting within the scope of his employment with C & P to the extent that he violated the statute."

The court granted appellees' motion for summary judgment on 28 November 1989. The court concluded that "there is no evidence or reasonable inferences that Donald K. Wood acted wilfully." Therefore, the court explained, "[b]ecause the claim against the C & P Telephone Company is predicated upon the doctrine of *respondeat superior,* the Court finds it unnecessary to address the other arguments presented by . . . [C & P]." Final judgment was entered against appellant on 27 February 1990.[13]

On 6 March 1990, appellant noted a timely appeal to this Court. In *Fearnow v. Chesapeake & Potomac Tel. Co.,* 85 Md.App. 788, 790, September Term, No. 392, an unreported per curiam opinion filed on 4 January 1991, this Court re-

---

11. That dismissal is not an issue in this appeal.

12. The order granting the stipulation of dismissal with prejudice of the civil conspiracy count was issued on 2 November 1989.

13. Also on 27 February 1990, appellant voluntarily dismissed Kauffman and Baker, and settled with Mowen, Ryder, and Dunahugh.

versed and remanded the circuit court's grant of appellees' motion for summary judgment. This Court explained that "the determination of willfulness is a question of intent, and as such, is within the province of a fact-finder and should not be determined on a motion for summary judgment." The parties then filed petitions for writ of certiorari, which were denied.

On remand, the trial court heard argument on the respondeat superior and scope of employment issues and, on 1 September 1992, granted summary judgment to C&P, thereby removing it from this case.[14] On 10 September 1992, appellant filed a motion for summary judgment requesting that the court "issue an Order stating that [Wood] violated [the Maryland Wiretap Act] and permit [appellant] to proceed to trial to prove the type and amount of damages." That motion was denied on 27 October 1992.

Also on 27 October 1992, the circuit court granted Wood's partial motion for summary judgment as to the issue of punitive damages. In so ruling, the court found that "proof of malice is required to support the imposition of punitive damages under the [Maryland Wiretap Act]." Therefore, concluded the court, "the evidence before it is insufficient as a matter of law to support a finding that [Wood] acted with malice and ... punitive damages would be inappropriate in this case."

On 3 June 1993, summary judgment was again granted in favor of Wood on the issue of reputational damages and resultant emotional distress.[15] The court explained:

> While the court agrees that reputational damage may be recovered under the statute as a component of actual damages, such damages are not appropriate under the facts of this case. The statute clearly does not prohibit the disclosure of the existence of a wiretap. The only disclosure prohibited by the statute is a disclosure of the contents of

---

14. An amended memorandum opinion was filed on 16 September 1992.

15. This summary judgment motion was styled, in the alternative, as a motion *in limine* to exclude evidence of reputational damages and emotional distress resulting from such reputational injury.

the communication. No such disclosure is present in this case.

The court concluded that "any damage caused to [appellant's] reputation due to this publicity was due to the existence of the underlying suspicions of [appellant] within the police department."

The case proceeded to trial against Wood on 21 June 1993. After six days of trial, the jury answered the following question in the negative: "Did the Defendant, Donald K. Wood, willfully intercept any telephone communications of Leon C. Fearnow?" Judgment was entered on 26 July 1993; appellant noted a timely appeal to this Court.

We shall relate additional facts as necessary in our discussion of appellant's issues.

## DISCUSSION

### I.

As an initial challenge, appellant argues that the circuit court erred in refusing to give appellant's requested jury instruction no. 21:

I have ruled that Donald Wood is responsible for the injuries and damages to Leon Fearnow in this case so you need not concern yourself with that question.

You need only decide the amount of damages that should be awarded.

In support of this verdict-directing instruction, appellant asserts that, because the circuit court instructed the jury that appellant was not guilty of any crime, section 10–402(c)(2) of the Act[16] did not apply. Therefore, argued appellant, section

---

16. Section 10–402(c)(2) provides:

It is lawful under this subtitle for an investigative or law enforcement officer acting in a criminal investigation or any other person acting at the prior direction and under the supervision of an investigative or law enforcement officer to intercept a wire, oral, or electronic communication in order to provide evidence of the commission of the offenses of murder, kidnapping, rape, a sexual offense in the first or second degree, child abuse, gambling, robbery, any felony

10–402(c)(1),[17] making it lawful to intercept a wire or oral communication with a court order, imposed on Wood a legal duty to inquire as to the existence of a court order. Because Wood conceded that he did not so inquire, his conduct could not fall under section 10–402(c)(1), and is consequently a violation of the Maryland Wiretap Act.

■ To determine the propriety of denying a requested jury instruction, we must examine whether the requested jury instruction is a correct statement of the law, whether the law is applicable in light of the evidence presented to the jury, and whether the requested instruction was fairly covered by the instructions actually given. *Sergeant Co. v. Pickett*, 285 Md. 186, 193, 401 A.2d 651 (1979); *E.G. Rock, Inc. v. Danly*, 98 Md.App. 411, 421, 633 A.2d 485 (1993); *Myers v. Estate of Alessi*, 80 Md.App. 124, 132, 560 A.2d 59, *cert. denied*, 317 Md. 640, 566 A.2d 101 (1989). As appellant's instruction no. 21 fails the first and second parts of this test, we affirm the circuit court's refusal to give such an instruction.

punishable under the "Arson and Burning" subheading of Article 27, bribery, extortion, or dealing in controlled dangerous substances, including violations of Article 27, § 286B or § 287A, fraudulent insurance acts, as defined in Article 48A, § 233 or any conspiracy or solicitation to commit any of these offenses, or where any person has created a barricade situation and probable cause exists for the investigative or law enforcement officer to believe a hostage or hostages may be involved, where the person is a party to the communication or one of the parties to the communication has given prior consent to the interception.
Md.Code Ann., Cts. & Jud.Proc. § 10–402(c)(2) (1994 Supp.).

17. Section 10–402(c)(1)(ii)1. provides:
It is lawful under this subtitle for a provider of wire or electronic communication service, its officers, employees, and agents, landlords, custodians or other persons to provide information, facilities, or technical assistance to persons authorized by federal or State law to intercept wire, oral, or electronic communications or to conduct electronic surveillance, if the provider, its officers, employees, or agents, landlord, custodian, or other specified person has been provided with a court order signed by the authorizing judge directing the provision of information, facilities, or technical assistance.
Md.Code Ann., Cts. & Jud.Proc. § 10–402(c)(1)(ii)1. (1994 Supp.).

First, we hold that appellant's requested jury instruction was an incorrect statement of the law concerning the Maryland Wiretap Act. Appellant contends that Wood violated section 10–410(a) of the Act, which establishes civil liability, except where specifically provided otherwise, for the wilful interception of any wire, oral, or electronic communication.[18] Section 10–410 also establishes civil liability for a violation of section 10–402 [19] and authorizes a private cause of action. *Kassap v. Seitz*, 315 Md. 155, 159, 553 A.2d 714 (1989). To establish liability under the Maryland Wiretap Act, appellant must prove that Wood acted wilfully. *Earley v. Smoot*, 846 F.Supp. 451, 453 (D.Md.1994) (interpreting the Maryland Wiretap Act); *Benford v. ABC*, 649 F.Supp. 9, 10 (D.Md.1986) (same). The term "wilfully" means "more than intentional or voluntary. It denotes either an intentional violation or a reckless disregard of a known legal duty." [20] *Id.* Indeed, as

---

18. Section 10–410(a) provides in pertinent part:

 *Civil Liability.*—Any person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of this subtitle shall have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use the communications....

 Md.Code Ann., Cts. & Jud.Proc. § 10–410(a).

19. Section 10–402(a) provides:

 *Unlawful acts.*—Except as otherwise specifically provided in this subtitle it is unlawful for any person to:

 (1) Wilfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

 (2) Wilfully disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle; or

 (3) Wilfully use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle.

 Md.Code Ann., Cts. & Jud.Proc. § 10–402(a) (1994 Supp.).

20. Appellees argue in footnote 29 to their brief that "a 'reckless disregard' standard is not properly included within the definition of wilful-

the federal district court explained in *Earley,* the violator must know that what he or she is doing is illegal. *Earley,* 846 F.Supp. at 453.

Section 10–402(c), on the other hand, sets forth exceptions, under the caption "Lawful acts," to the conduct proscribed in sections 10–410 and 10–402(a). Merely because there existed evidence that Wood did not inquire into the lawfulness of the wiretap and no court order to wiretap appellant's telephone extension was obtained, that does not establish, as a matter of law, that Wood violated the Maryland Wiretap Act.[21] Appellant still must prove that Wood wilfully intercepted a wire or oral communication in violation of section 10–410 or section 10–402(a). Whether Wood had a legal duty to inquire into the police officers' authorization, i.e., court order, to conduct the wiretap is but a factor for the jury to consider in making its determination of wilfulness.

Second, we hold that the evidence presented at trial was not sufficient to establish, as a matter of law, that Wood acted wilfully. Appellant's instruction no. 21 was a verdict-directing instruction stating, in essence, that Wood, as a

---

ness." We disagree and adhere like a barnacle to the clear definition of wilfulness provided in *Benford* and *Earley, supra.*

We acknowledge, however, that the definition of wilfulness to which we subscribe in the instant case is limited to its meaning within the Maryland Wiretap Act. The pertinent background in this case—federal caselaw interpreting the pre–1986 federal statute's wilfulness requirement (Title III, Omnibus Crime Control and Safe Streets Act of 1968)— leads us to our conclusion in this regard. Our holding should not be read as an abrogation, broadening, or modification of how Maryland courts have previously construed wilfulness in other legal contexts.

21. Such evidence may preclude Wood from claiming as a defense one of the exceptions, i.e., section 10–402(c)(1) or (2). The court's instruction that appellant was not "guilty of any criminal act" does not, however, necessarily preclude the application of section 10–402(c)(2). That section provides that it is lawful, with one-party consent, to intercept wire or oral communications in a criminal investigation of one of the enumerated crimes in order to obtain evidence pertaining to that crime. It does not, however, require the target of the investigation to have *actually* been adjudged guilty of committing one of those crimes. Suspicion enough to warrant an investigation is sufficient.

matter of law, wilfully intercepted the wire communications of appellant. Appellant points to the following facts, based on Wood's response to cross-examination questions regarding the C & P company manual,[22] that he contends "clearly show[ ] a reckless disregard of a known legal duty": no court order was ever obtained to wiretap appellant's telephone; Wood knew that a court order was necessary to install the wiretap; Wood had a legal duty to inquire as to the officer's authorization to implement the wiretap; Wood testified that the C & P manual informed him that it was a criminal offense to violate "the secrecy of communications."

Counsel for Wood, however, countered by asking Wood his interpretation of the scope of the C & P company manual. Wood explained that "this document was published for C & P employees to protect the C & P network." Wood testified that he did not understand the company manual to apply to equipment owned by its customers, i.e., the Hagerstown Police Department, and therefore he believed he was under no legal duty to inquire as to whether the police needed, applied for, or actually obtained a court order.[23] The testimony at trial,

---

**22.** The C & P company manual consists of guidelines promulgated by C & P that govern the conduct of its employees.

**23.** During cross-examination of Wood, counsel for appellant pointed out that the C&P company manual stated: " 'Such rules are, of course, not intended to prevent access to information and communications by employees whose duties require it or by law enforcement officers acting with proper authorization.' " Wood explained that he believed "proper authorization" to mean "court order." The following colloquy followed:

[COUNSEL FOR APPELLANT]: A court order? So what [the C & P company manual] is saying to you is that if you're going to cooperate, as it says here, with law enforcement officials, they have to have proper authorization. Is that what it says?
[WOOD]: Yes, sir.
[COUNSEL FOR APPELLANT]: Now then you have a duty then, would you agree, that when you're asked to do something by law enforcement personnel you have a duty to see that they're acting with proper authorization. Isn't that what that says?
[WOOD]: That is what it is saying.
[COUNSEL FOR APPELLANT]: Did you do anything that night to determine whether Ryder or the Chief has proper authorization?

however, at the very least, presented conflicting evidence of Wood's state of mind.

Moreover, Wood's testimony at trial indicated that he believed the law relating to wiretaps was complex, and did not always require a court order.[24] Wood also testified that he relied upon Chief Mowen and the other police officers to have obeyed the law in obtaining the necessary authorization to wiretap their own equipment.

■ As appellant's proposed jury instruction no. 21 would have amounted to, in essence, a verdict on the issue of Wood's liability, the evidence adduced at trial, coupled with the conflicting testimony regarding Wood's state of mind, do not support the giving of such an instruction. As explained in *Rock*, a jury instruction is not appropriate if it is not "*applicable* in light of the evidence before the jury." *Rock*, 98 Md.App. at 421, 633 A.2d 485 (emphasis in original). Indeed, this Court, in an unreported per curiam opinion in this same case,[25] reversed and remanded the trial court's grant of sum-

[WOOD]: No, I did not. Chief Mowen and Detective Ryder were acting as officials of the Hagerstown Police Department within the Hagerstown Police Department and I saw no reason to question their activities.
. . . .
[COUNSEL FOR APPELLANT]: Would you agree with me that what I've just read to you is the rule, the published rule, of the telephone company, this is what you're required to do?
[WOOD]: As it applies to the telephone network and I gave you three different examples there ...
[COUNSEL FOR APPELLANT]: ... Can you tell us where you, what gives you the right to do something that is contrary to what you're told here, what's written here?
[WOOD]: In this particular case, what I was doing was assisting a customer which had the legal right to know where the binding posts were located within that building.

**24.** Indeed, the Maryland Wiretap Act provides for several "lawful interceptions" without a court order. *See* Md.Code Ann., Cts. & Jud. Proc. § 10–402(c) (1994 Supp.) (listing all lawful interceptions under the Act).

**25.** *See* Md.Rule 8–114(b): "An unreported opinion of either Court may be cited in either Court for any purpose other than as precedent within the rule of stare decisis or as persuasive authority."

mary judgment in favor of *appellees* on the issue of wilfulness (i.e., liability) and stated: "[T]he determination of wilfulness is a question of intent, and as such, is within the province of a fact-finder." *Fearnow v. Chesapeake & Potomac Tel. Co.*, 85 Md.App. 788, 790, September Term 1990, No. 392, slip op. at 5. We are in accord with this Court's prior decision that the determination of wilfulness is a question for the finder of fact in this case.

Appellees also contend that appellant's requested instruction is equivalent to "making a *de novo* motion in this Court for a 'directed verdict' on the issue of Wood's liability, since he neither moved for judgment nor otherwise properly preserved the issue in the trial court."

We agree with appellees that requested jury instruction no. 21 was, in essence, an attempt to have the trial court grant a motion for judgment without employing the necessary procedural mechanism for making such a motion. Md.Rule 2–519(a) provides:

> A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence. The moving party shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment shall be necessary. A party does not waive the right to make the motion by introducing evidence during the presentation of an opposing party's case.

To obtain such relief, or to preserve the point for appellate review, a party must: (i) specifically make the motion at the close of the evidence; and (ii) state with particularity the grounds for the motion. These procedural safeguards are necessary to ensure that the opposing party is not "sandbagged." *Annapolis Mall Ltd. Partnership v. Yogurt Tree, Inc.*, 299 Md. 244, 256, 473 A.2d 32 (1984); 5A J. Moore, *Moore's Federal Practice* ¶ 50.08, at 50–88 (2d ed. 1982). Appellant, however, ignored the mandate of our Rules and blazed his own brave, new procedural trail, attempting to have

judgment granted by way of jury instruction, rather than by the appropriate motion to the trial court.

As we have already lauded the circuit court's decision to refuse appellant's jury instruction no. 21 based on the three-part test set forth in *Sergeant, supra,* we also note, for the sake of thoroughness, that the instruction is, in effect, an impermissible attempt at a motion for judgment on the issue of liability.

## II.

■■■ Appellant also contends that the trial court erred in giving certain instructions to the jury. In reviewing the adequacy of a given jury instruction, we must determine whether the charge as a whole contains a fair statement of the law. *Casey v. Roman Catholic Archbishop,* 217 Md. 595, 612, 143 A.2d 627 (1958); *State ex rel. Taylor v. Barlly,* 216 Md. 94, 100, 140 A.2d 173 (1958); *Ager v. Baltimore Transit Co.,* 213 Md. 414, 425, 132 A.2d 469 (1957).

## A.

■■■ The first jury instruction objected to by appellant in his brief was:

In determining whether the defendant, Don Wood, Donald Wood, is liable, you are first to, you are first to determine whether or not there was a violation of the Maryland Wiretap Statute.

Appellant argues that because there was a stipulation that no court order was obtained to wiretap appellant's telephone extension, the wiretap was per se illegal, and the jury should not have been permitted to decide whether there was a violation of the Maryland Wiretap Act. Appellees argue, however, that "there was ample evidence that Wood *did not act wilfully,* and there was *no evidence* of either willfulness or interception." (emphasis in original). Therefore, assert appellees, only Wood could complain that the issue of violation of the Act was submitted to the jury.

As this is, in essence, the same argument advanced by appellant in issue I, we reiterate that the issue of Wood's liability in this case is properly a question for the jury. It is clear that to recover under section 10–410 of the Maryland Wiretap Act, appellant must first prove that there was an actual violation of the Act. The absence of a court order, however, is not dispositive of this issue. *See* discussion *supra.* Consequently, the trial court's instruction was the precise vehicle through which the issue of Wood's liability was presented to the jury.[26]

## B. & C.

The second jury instruction objected to by appellant was:

The Maryland legislature enacted this law to prevent the unauthorized interception of conversations where at least one of the parties has a reasonable expectation of privacy.

I might stop here and say that the attorneys will argue to you their differing views on what is meant by this law with respect to reasonable expectation of privacy.

. . . .

In proving a violation of the statute, the defendant [sic] must prove that any conversations that were intercepted were ones in which he had an expectation of privacy. This is a factual determination which must be made by you, the jury.

Appellant contends that the trial court erred on several grounds in giving this instruction to the jury. These include:

---

**26.** Although we agree that the trial court's instruction was a correct statement of the law, we are confounded by appellees' argument. While it may be true that there "was ample evidence that Wood did not act wilfully," it does not follow that "[o]nly Wood ... could complain, that the issue of whether Wood violated the Act was submitted to the jury." (emphasis omitted). If appellant believes, albeit erroneously, that the evidence adduced at trial established liability on behalf of Wood as a matter of law, he is entitled, just the same as Wood would be entitled in the opposite case, to object to an instruction sending the issue of liability to the jury. It does not prohibit, however, appellant from challenging the given instruction.

(i) the definition of "wire communication," as provided in § 10–401(1)(i) of the Maryland Wiretap Act, does not require proof of a reasonable expectation of privacy; (ii) "[a]ll parties to a telephone conversation have a reasonable expectation of privacy;" (iii) appellees "elicited absolutely no evidence to support this instruction;" and, (iv) requiring a finding of reasonable expectation of privacy would place an undue burden on appellant because § 10–402(a)(2) makes it unlawful for any person to disclose to anyone the contents of any wire if such information was obtained in violation of the law; (v) this Court's prior ruling in *Fearnow v. Chesapeake & Potomac Tel. Co.*, 85 Md.App. 788, 790, September Term 1990, No. 392, held that appellant has, as a matter of law, a reasonable expectation of privacy in the use of his office telephone.

Appellees, as a threshold issue, argue that appellant failed to preserve several of these challenges. Rule 2–520 provides that a party must "stat[e] distinctly the matter to which the party objects and the grounds of the objection." As appellant did not state distinctly the first three of the challenges he now presses on appeal, argue appellees, they are not preserved for our review. In addition, appellees respond substantively to each of appellant's numbered arguments respectively: (i) appellant invited this alleged error by basing his claim on appeal exclusively on the interception of "wire communications" as opposed to "wire and oral communications," so as to argue, albeit incorrectly, that wire communications do not require a reasonable expectation of privacy; (ii) the jury instruction as given was a correct statement of the law; (iii) the fact that the tapes of the allegedly intercepted communications would have been available through judicial process had appellant made such an attempt, coupled with the other evidence available to appellant, vitiate any notion of an undue burden on appellant; and, (iv) this Court's footnote in its prior unreported per curiam opinion was dicta and therefore not binding on the circuit court in this case.

We first address appellant's alleged failure to preserve several of the objections now raised on appeal. Appellant's exception to the instruction at trial was as follows:

In addition, we except to the giving of Defendant's Instruction No. 7. We believe that reasonable privacy is not an issue of fact before this jury. The Court of Special Appeals, in the *Fearnow* decision, has already stated that the plaintiff has a reasonable expectation of privacy and we believe that this Court is bound by that determination and this is not an issue of fact for the jury. In addition, we believe that the statute does not require that the plaintiff prove that each conversation intercepted was one in which he had a reasonable expectation of privacy. We don't believe we have that burden of proof under that statute and that we are entitled to an inference that when the recorder was hooked up on plaintiff's phone, that that constitutes the interception, and we do not have to prove each specific conversation, that there was a reasonable expectation of privacy on each conversation. We believe that the instruction that was given was confusing because it implies that we have to prove each specific conversation. As we pointed out in chambers, the tapes are under seal. They may have very well been destroyed and the plaintiff has no way of ascertaining the subject matter of each conversation on that tape. Oh, and then we have to get the consent of all the other parties to the conversations on the tape because they have an expectation of privacy. And as also pointed out in chambers, Judge Thacker [sic] has ordered the tapes sealed.

It is clear that appellant objected to this jury instruction based, in part, on the contention that his expectation of privacy in his telephone communications was not an issue for the jury. Indeed, appellant stated specifically "that reasonable privacy is not an issue of fact before this jury." We believe that this was sufficient, pursuant to Md.Rule 2–520(e), to preserve that issue for our review. As it is upon this basis that we hold the instruction to be reversible error, we need not discuss appellant's additional claims in this regard.

█ The Maryland Wiretap Act, Md.Code Ann., Cts. & Jud.Proc. § 10–401 *et seq.*, defines "wire communication," in pertinent part, as follows:

any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of a connection in a switching station) furnished or operated by any person licensed to engage in providing or operating such facilities for the transmission of communications.

*Id.* § 10–401(1)(i). The Act defines "oral communication," in pertinent part, as "any conversation or words spoken to or by any person in private conversation." Conspicuously absent from the definition of "wire communication" are the words "in private conversation." It is this distinction that renders the giving of the reasonable expectation of privacy instruction error in the instant case.

 It is clear through both legislative history and case precedent that the federal wiretap statute, 18 U.S.C. § 2510 *et seq.,* served as the guiding light for the Maryland Act. *Mustafa v. State,* 323 Md. 65, 69, 591 A.2d 481 (1991) ("The Maryland Act was modeled on the federal act and closely tracks its provisions . . . ."); *State v. Bailey,* 289 Md. 143, 151, 422 A.2d 1021 (1981) ("The Maryland 'Wiretapping and Electronic Surveillance' law is an offspring of the Omnibus Crime Control and Safe Streets Act of 1968 . . . ."); *Standiford v. Standiford,* 89 Md.App. 326, 333–34, 598 A.2d 495 (1991) ("The Act is an offspring of, and closely parallels, Title III of the Omnibus Crime Control and Safe Streets Act of 1968 . . . ."), *cert. denied,* 325 Md. 526, 601 A.2d 1101 (1992); *Benford v. ABC,* 554 F.Supp. 145, 150 (D.Md.1982) ("It is apparent that the Maryland General Assembly adopted substantially all of the language in Title III of the Omnibus Crime Control and Safe Streets Act . . . with minor modifications, in enacting this legislation."); Richard P. Gilbert, *A Diagnosis, Dissection, and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law,* 8 U.Balt.L.Rev. 183, 191 (1979) (section 10–401(1) is the same as the federal model). Therefore, we read the acts *in pari materia,* so as to obtain the legislative intent of the language.

The federal act defines "wire communication" almost identically to the Maryland act as:

> any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications for communications affecting interstate or foreign commerce ...

The federal act defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."

■■■ Notwithstanding the slight difference in wording between the federal and Maryland definitions of "oral communication," [27] both acts require that a plaintiff show a reasonable expectation of privacy in the intercepted *oral* communication. *See Benford v. ABC,* 649 F.Supp. 9, 11 (D.Md.1986) (defining "private conversation," as used on § 10–401(2) of the Maryland Act, as requiring a case-by-case examination into the person's reasonable expectation of privacy); *PBA Local No. 38 v. Woodbridge Police Dep't,* 832 F.Supp. 808, 819 (D.N.J. 1993) (comparing federal act to New Jersey act; "the 'expectation of privacy' language in [§ 2510(2) ] was intended to parallel the language and standard of *Katz,* making the 'reasonable expectation of privacy' highly relevant to claimed interceptions of oral conversations" (citing *In re John Doe Trader Number One,* 894 F.2d 240, 242 (7th Cir.1990); *United States v. Harrelson,* 754 F.2d 1153, 1170–71 (5th Cir.), *cert. denied,* 474 U.S. 908, 1034, 106 S.Ct. 277, 599, 88 L.Ed.2d 241, 578 (1985)); *see also Siripongs v. Calderon,* 35 F.3d 1308, 1320 (9th Cir.

---

**27.** The Maryland Act states "in a private conversation," whereas the federal act states "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."

1994) ("A reasonable expectation that a communication is not subject to interception is required for protection under Title III if the interception is of an oral, as opposed to a wire, communication."); *United States v. Axselle*, 604 F.2d 1330, 1334 (10th Cir.1979) ("only those oral communications which are made under circumstances justifying an expectation that they are not subject to interception are protected"); *United States v. Hall*, 488 F.2d 193, 196 (9th Cir.1973) ("the definition of oral communication includes the expectation of privacy language derived from *Katz* "); *accord State v. Smith*, 149 Wis.2d 89, 438 N.W.2d 571, 573 (1989) (interpreting Wisconsin act; "[w]here ... there is an 'oral communication,' there must be not only a subjective belief that the communication is private, but that belief in privacy must be one that a reasonable person would have in the circumstances").

A telephone conversation, however, is a wire communication.[28] *Forsyth v. Barr*, 19 F.3d 1527, 1534 & n. 14 (5th Cir.1994), *appeal pending*, No. 93–4829 (1994); *Briggs v. American Air Filter Co.*, 630 F.2d 414, 417 (5th Cir.1980) (same); *Axselle*, 604 F.2d at 1334 ("We feel it clear that the telephone communication in question here was a wire communication within the meaning of the Act."); *United States v. Harpel*, 493 F.2d 346, 349 (10th Cir.1974) ("The subject telephone conversation clearly qualified as a 'wire communication' as defined in 18 U.S.C. § 2510(1)."); *Hall*, 488 F.2d at 197 ("when part of a communication is carried to or from a landline telephone, the entire conversation is a wire communication"); *PBA Local No. 38*, 832 F.Supp. at 819 ("Telephone conversations fall under the definition of 'wire communication' in both the federal and state acts." (footnote omitted)); *Walker v. Darby*, 706 F.Supp. 1467, 1477–78 (N.D.Ala.1989) ("well settled rule that a telephone conversation is a wire communication"), *rev'd on other grounds*, 911 F.2d 1573 (11th

---

**28.** *But see People v. Suttle*, 90 Cal.App.3d 572, 153 Cal.Rptr. 409, 414 (1979) ("one half of a telephone conversation is an 'oral communication' as opposed to a 'wire communication.' Although the speaker's voice is carried over the telephone wire, it also escapes in to the area surrounding the speaker....").

Cir.1990); *Kratz v. Kratz*, 477 F.Supp. 463, 473 (E.D.Pa.1979) ("a telephone call ... is a wire communication"); *accord People v. Otto*, 2 Cal.4th 1088, 9 Cal.Rptr.2d 596, 602 & n. 7, 831 P.2d 1178, 1184 & n. 7 ("it is well settled that a telephone conversation is a 'wire communication' within the meaning of Title III"), *cert. denied*, —— U.S. ——, 113 S.Ct. 414, 121 L.Ed.2d 338 (1992); *Smith*, 438 N.W.2d at 573 (landline telephone is a wire communication). And wire communications, unlike oral communications, are protected against interception by electronic, mechanical, and other devices *regardless of the speaker's expectation of privacy.*[29] *Briggs*, 630 F.2d at 417 n. 4. Indeed, the privacy of a wire communication appears to be protected as a matter of law. *Smith*, 438 N.W.2d at 573. Consequently, a plaintiff's reasonable expectation of privacy under the federal act, as well as the Maryland act, is irrelevant. *Id.* ("[t]he expectation of privacy, whether reasonable or unreasonable, is irrelevant"); *PBA Local No. 38*, 832 F.Supp. at 819 ("wire communications, unlike oral communications, are generally protected regardless of whether the person making or receiving such communications has an expectation of privacy"); *Kratz*, 477 F.Supp. at 473 ("whether or not [plaintiff] had any justifiable expectation of privacy in the telephone calls made from or received in their own homes is irrelevant under Title III").

There is, therefore, a sharp legal and factual distinction between an intercepted "wire communication" and an intercepted "oral communication" under both the Maryland and the federal acts. The classification in which a particular communication is placed can play a significant role in how it should be evaluated by the fact finder.

---

**29.** *United States v. Hall*, 488 F.2d 193, 196 (9th Cir.1973) explained the reason for the more restrictive definition of oral communications:

> When a person talks by telephone, he can reasonably assume privacy. That assumption may often be invalid for non-wire communications. Therefore, it is incumbent upon the participants in an oral communication to make a reasonable estimate of the privacy afforded them by their particular circumstances.

We hold that appellant's telephone conversations are "wire communications" as defined by section 10–401(1)(i) of the Maryland Wiretap Act, and are therefore protected against interception regardless of appellant's expectation of privacy in those communications. Appellant's reasonable expectation of privacy being irrelevant to statutory liability for the alleged interception of wire communications, the circuit court's instruction to the jury admonishing them to assess appellant's expectation of privacy in his office telephone conversations must be declared error.

 We are precluded from finding harmless error in this instance as the reasonable expectation of privacy instruction went clearly to the heart of the jury's determination whether Wood acted wilfully. The trial judge, in instructing the jury on the element of wilfulness, explained:

> In proving a violation of statute, the defendant [sic] must prove that *any conversations* that were intercepted were ones in which he *had a reasonable expectation of privacy.* This is a factual determination which must be made by you, the jury.
>
> If you find that the defendant, Donald Wood, *knew* that Leon Fearnow and all other parties to a telephone conversation *had a reasonable right of privacy in their conversation over a telephone . . . that is a factor that you may consider in determining whether the defendant . . . acted wilfully.*

(emphasis added).[30]

Therefore, had the jury been properly instructed, i.e., "because plaintiff's telephone communications are 'wire communications,' the plaintiff's reasonable expectation of privacy is irrelevant to your determination of whether Wood acted wilfully," it would have been free to decide whether Wood acted wilfully when he allegedly intercepted appellant's telephone conversations, regardless of appellant's reasonable expectation of privacy and Wood's knowledge of that expectation.

---

**30.** This instruction is the basis of appellant's issue II.C. As it is integral to our discussion of this issue, we will not address it separately.

 Appellees argue, however, that appellant invited this error by pleading interception of both oral and wire communications in his complaint. As appellant did not differentiate between oral and wire communications throughout the trial, contend appellees, "[h]e cannot now assert that his claims were based exclusively on 'wire communications,' in order to argue (incorrectly) that an expectation of privacy was unnecessary." Notwithstanding appellees' misstatement of the law as to expectation of privacy, we are unpersuaded, in light of the evidence in the record, that appellant "invited" this error by failing to differentiate its claims. As we explained *supra*, appellant clearly and distinctly objected to the circuit court's expectation of privacy instruction in accordance with Md.Rule 2–520(e). As this Court held in *Edmonds v. Murphy*, 83 Md.App. 133, 178, 573 A.2d 853 (1990), *aff'd*, 325 Md. 342, 601 A.2d 102 (1992) (citations omitted):

> The purpose of the relevant Maryland Rule is to allow the trial court to correct any inadvertent error or omission in the oral charge.... In this manner, the trial judge is afforded an opportunity to amend or supplement his charge if he deems an amendment necessary.

We believe that the trial judge was afforded such an opportunity and thus the purposes of Rule 2–520 were adequately served by the exception taken by appellant.

Appellees also argue that the trial court's instruction was a correct exposition of the law. Appellees quote this Court's prior unreported per curiam opinion in this case [31] in support

---

31. The earlier panel of this Court, in an introductory paragraph to its discussion, explained that "the Maryland Legislature enacted Courts and Judicial Proceedings Article, Section 10–402 *et seq.* to prevent the unauthorized interception of conversations where at least one of the parties had a reasonable expectation of privacy." *Fearnow*, 85 Md.App. 788, 790, September Term, No. 392, slip op. at 4. Appellees, however, misinterpret this language to mean that a reasonable expectation of privacy determination must be made by the fact finder in every case. This Court's statement means what it says it means: the Maryland Wiretap Act prevents the unauthorized interception of conversations where at least one party had a reasonable expectation of privacy. It so

of their contention that reasonable expectation of privacy is "as much a component of protected wire communication as it is a component of protected oral communications." Moreover, appellees assert that "[n]ot every telephone conversation is one in which the speaker has a reasonable expectation of privacy." The federal court decisions cited by appellees as support, however, apply the expectation of privacy standard set forth in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) to telephone communications *not protected by the federal wiretap act.*[32] This Court's prior opinion seems also to misinterpret this distinction.[33] *See Fearnow*, 85 Md.App. 788, 790, September Term, No. 392, slip op. at 5 n. 2. Every case that we have discovered interpreting a telephone conversation under the federal wiretap act has held that the *Katz* reasonable expectation of privacy standard is inapplicable to wire communications. We can find no reason to interpret the Maryland act differently.

Therefore, we hold that appellant's telephone conversations are wire communications under the Maryland Wiretap Act. Consequently, appellant's reasonable expectation of privacy in those telephone conversations, and Wood's knowledge of that expectation of privacy, should have been irrelevant to the jury's determination of Wood's wilfulness.

## D.

The fourth jury instruction objected to by appellant was:

---

happens that that expectation of privacy is presumed in the case of wire communications. *See, e.g., PBA Local No. 38*, 832 F.Supp. at 819.

**32.** Indeed, two cases cited by appellees, *United States v. Veilleux*, 846 F.Supp. 149 (D.N.H.1994) and *United States v. Muckenthaler*, 584 F.2d 240 (8th Cir.1978), differentiate between the speaker's expectation of privacy in the words carried by the telephone wire and those overheard by a person within hearing distance of the speaker. *See People v. Suttle*, 90 Cal.App.3d 572, 153 Cal.Rptr. 409, 414 (1979) ("one half of a telephone conversation is an 'oral communication' as opposed to a 'wire communication.' Although the speaker's voice is carried over the telephone wire, it also escapes in to the area surrounding the speaker....").

**33.** Also, in context, the prior opinion's advice seems true obiter dicta.

In the absence of evidence to the contrary, there is a presumption under Maryland law that public officers properly performed their duties and did what the law required of them. The determination in this case is to [sic] whether there is evidence to the contrary or not will be argued by the attorneys, and is a determination for you, the jury, to make. If you find that there is evidence to the contrary, then I point out to you that there is no presumption. If, on the other hand, you find that there is no evidence to the contrary, then I instruct you that, in that instance, there is a presumption under Maryland law that public officers properly performed their duties and did what the law required of them.

Appellant argues that, because the Maryland Wiretap Act imposes a duty on Wood to inquire into the police officers' authorization for wiretapping appellant's telephone, "[a]ny presumption in [the police officers'] favor improperly and prejudicially eliminated any duty or obligation on Wood" to inquire into such authorization. In fact, argues appellant, the Maryland Wiretap Act "voids any presumption that law enforcement officers are presumed to act lawfully." [34]

Appellees argue initially that appellant objected to the giving of this instruction, but did not refer to section 10–402(c)(1)(ii) in his objection and therefore cannot properly assert it before this Court. As to the merits of appellant's claim, appellees argue that the Maryland Wiretap Act "imposes no 'duty of inquiry' " which precludes this presumption." (emphasis omitted). Instead, argue appellees, the Act prohibits wilful violations, "leaving it to the fact finder to determine whether the circumstances warranted inquiry."

We agree that appellant failed to object with specificity to the challenged jury instruction as required by Md.Rule 2–520(e). Appellant's objection was as follows:

---

**34.** In support of this contention, appellant cites Md.Code Ann., Cts. & Jud.Proc. § 10–402(c)(1)(ii)1. (1994 Supp.).

We also except to the giving of Defendant's Instruction No. 5 pertaining to the presumption that police officers are properly [sic] their duties. We believe that it's a confusing instruction because it's not applicable in this case.

. . . .

And we believe that's prejudicial, particularly since the Court denied our presumption that a person is presumed to know the law. We believe if you're going to give the presumption of police officers or public officials are [sic] properly performed their duties, that we should have been given the presumption instruction that you're presumed to know the law.

As appellant failed to raise to the trial court section 10–402(c)(1)(ii) as a basis for his objection, that issue is not before us. Md.Rule 2–520(e); *Montgomery Ward & Co. v. McFarland*, 21 Md.App. 501, 516, 319 A.2d 824 (1974). We shall, however, for the benefit and guidance of the trial court, discuss this issue. *See* Md.Rule 8–131(a).

As we explained *supra*, the Maryland Wiretap Act does not impose a duty of inquiry on Wood to determine the lawfulness of the police department's wiretap activities. Therefore, an instruction that public officials are presumed to perform properly their duties cannot eliminate such a duty.[35]

---

**35.** Appellant also quotes the following passage from *Citron v. Citron*, 539 F.Supp. 621 (S.D.N.Y.1982), *aff'd*, 722 F.2d 14 (2d Cir.1983), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984) in his brief: "In view of [telephone company employees'] familiarity with the law in this area, they might well be considered *reckless* should it be shown that they were less than diligent in ascertaining the validity of an authorization which later turned out to have been invalid." Appellant contends that this language stands for the proposition that Wood had a duty to inquire into the legality of the police officers' authorization to wiretap appellant's telephone.

We fail to distill such meaning from the quoted language. Instead, we glean support for our conclusion that Wood's inquiry into the police officers' authorization is but one factor for the jury to consider in determining wilfulness. The *Citron* Court stated that a telephone company employee's failure to ascertain the validity of a wiretap authorization "might well be considered *reckless*," implying, as we have held, that it is a determination for the finder of fact. *Id.* at 626.

It is clear that Maryland recognizes a rebuttable presumption that public officers properly perform their duties. *Beane v. McMullen,* 265 Md. 585, 602, 291 A.2d 37 (1972) ("It is presumed that public officials will properly perform their duties."); *Lerch v. Maryland Port Auth.,* 240 Md. 438, 457, 214 A.2d 761 (1965) ("There is a strong presumption that public officers properly perform their duties."). It is also clear that Mowen and Ryder, as police officers, were public officials. Consequently, we hold that the circuit court's instruction that a presumption exists that "public officers properly performed their duties and did what the law required of them," was a correct statement of the law and properly warranted by the evidence presented at trial. *Sergeant,* 285 Md. at 193, 401 A.2d 651.

 We are similarly unpersuaded by the one-sentence assertion in appellant's brief that the Maryland Wiretap Act "voids any presumption that law enforcement officers are presumed to act lawfully." Again misinterpreting the exceptions set out in section 10–402(c), appellant contends that, because section 10–402(c)(1) requires a court order for the lawful interception of a wire or oral communication, there is no presumption that police officers properly perform their duties. As explained *supra,* the requirement of a court order is but one way to conduct a lawful interception of a wire or oral communication under the Act. Accordingly, we hold that the Maryland Wiretap Act does not void the presumption, afforded public officials in Maryland, that they perform their duties properly within the law.

### E.

The fifth jury instruction objected to by appellant was:

The burden is on the plaintiff to prove by clear and convincing evidence each item or element of damages he claims was caused by the defendant.

As this instruction relates to damages, and not liability, we elect not to reach the issue.

### III.

Appellant contends that the circuit court erred in failing to give certain requested jury instructions. As discussed *supra,* issue I, to determine the propriety of denying a requested jury instruction, we must examine whether the requested jury instruction is a correct statement of the law, whether the law is applicable in light of the evidence presented to the jury, and whether the requested instruction was fairly covered by the instructions actually given. *Sergeant Co. v. Pickett,* 285 Md. 186, 193, 401 A.2d 651 (1979); *E.G. Rock, Inc. v. Danly,* 98 Md.App. 411, 421, 633 A.2d 485 (1993); *Myers v. Estate of Alessi,* 80 Md.App. 124, 132, 560 A.2d 59, *cert. denied,* 317 Md. 640, 566 A.2d 101 (1989). Under this rule of law, we shall examine the first two and the last of appellant's four requested jury instructions, ignoring the third, as it is a sufficiency of the evidence question and may not present itself again at a new trial.

### A.

 Appellant requested a jury instruction that provided: "A person is presumed to know the law." Appellant argues that because C&P's business is primarily cable and wire communications, and it has employees specifically assigned to assist the police department, its employees "should be presumed to have the requisite knowledge and expertise in the State and Federal Wiretap Statutes. As such, Wood should be chargeable with knowledge of matters which he has the opportunity of knowing and should know."

We agree with appellees, however, that "[a]n instruction that Wood was presumed to know the law would have conflicted with the Act's requirement of criminal wilfulness." Violation of the Maryland Wiretap Act requires wilfulness on behalf of the alleged violator. *See Earley,* 846 F.Supp. at 453; *Benford,* 649 F.Supp. at 10. Wilfulness is defined as "either an intentional violation or a reckless disregard of a known legal duty." *Id.* "[W]hen the law makes knowledge of some requirement an element of the offense, it is totally incorrect to

say that ignorance of such law is no excuse or that everyone is presumed to know such law." *United States v. Golitschek*, 808 F.2d 195, 203 (2d Cir.1986); *accord United States v. Maniktala*, 934 F.2d 25, 29 (2d Cir.1991) ("the 'combination of an instruction that the charged offenses require some knowledge of the law and an instruction that everyone is presumed to know the law was erroneous'" (citing *Golitschnek*, 808 F.2d at 201)).

Appellant cites several cases in support of this requested jury instruction. All, however, are distinguishable in that none involved jury instructions or a claim requiring the element of wilfulness.[36]

### B.

▅▅ Appellant's next unrequited jury instruction provided: "Ownership of the telephone equipment has no bearing on whether or not consent exists under Maryland's wiretap act for a lawful interception." Appellant argues that this instruction was proper because the Maryland Wiretap Act protects the privacy of communications regardless of the ownership of the telephone equipment.

Ownership of the telephone equipment in the case *sub judice*, however, is relevant only to whether Wood acted wilfully in violation of the Maryland Wiretap Act. To this end, appellees introduced evidence at trial, without objection, that the Hagerstown Police Department owned the telephone equipment Wood was asked to assist in wiretapping. The

---

**36.** *Allers v. Tittsworth*, 269 Md. 677, 684, 309 A.2d 476 (1973) (*legislature* is presumed to have had and acted with full knowledge of prior and existing law in enacting certain legislation); *Flohr v. Coleman*, 245 Md. 254, 267, 225 A.2d 868 (1967) (motorist is presumed to know the law regulating the use of motor vehicles); *Keefauver v. Richardson*, 233 Md. 545, 551, 197 A.2d 438 (1964) (appellants were presumed to know the law and that two statutory avenues lay open to perfect their title); *Citron v. Citron*, 539 F.Supp. 621 (S.D.N.Y.1982) (telephone company employees are presumed "familiar" with the law in the area of wiretaps, not presumed to "know" the law), *aff'd*, 722 F.2d 14 (2d Cir. 1983), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984).

purpose of this evidence was to support the assertion that Wood believed the constricts of the C & P company manual applied only to C & P equipment, and therefore he was not intentionally and recklessly disregarding a "known" legal duty when he allegedly assisted the police officers in wiretapping their own equipment.

As appellees did not present evidence of the Hagerstown Police Department's ownership of the telephone equipment to prove consent,[37] appellant's requested jury instruction was properly denied as it was inapplicable in light of the evidence presented to the jury.

### C.

Appellant would next focus our attention on his requested jury instruction that provided: "There is no legally sufficient evidence that Fearnow's phone was consentually [sic] monitored under § 10–402(c)(2) of Maryland's wiretap act." As this instruction relates to sufficiency of the evidence and may not present itself at a new trial, we do not reach the issue.

### D.

Appellant also requested a jury instruction that provided: "Maryland's wiretap act required a court order prior to the interception of Fearnow's phone." As explained *supra* part I, text accompanying notes 19–26, this is an incorrect statement of the law. Therefore, we affirm the circuit court's refusal to give the instruction.

### IV.

Appellant contends that the circuit court erred in quashing certain trial subpoenas and sustaining objections to the use of interrogatory answers by appellees. As this is a discovery matter that may be resolved prior to any new trial, we do not reach the issue.

---

**37.** Indeed, appellees did not even argue consent to the jury.

## V.

### Respondeat Superior

The circuit court, by Memorandum and Order dated 1 September 1992, granted C&P's motion for summary judgment on the issue of respondeat superior. In that opinion, the court found that Wood "was not acting within the scope of his employment with C & P Telephone when he assisted the Hagerstown Police Department at police headquarters in implementing the wire-tap in question." The court explained that because Wood's alleged actions, if true, constituted a serious criminal violation, they "were not reasonably foreseeable or expectable in view of his duties." (citing Restatement (Second) of Agency § 231 cmt. a (1958) ("serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do")).

▋ Appellant argues first that the circuit court erred in granting C & P's motion for summary judgment on procedural grounds. Appellant contends that his Amended Complaint alleged that Wood was acting within the scope of his employment,[38] and that appellees did not specifically deny that allegation in their answer. Therefore, asserts appellant, pursuant to Md.Rule 2–323(e),[39] that allegation is deemed admitted.

While it is true that appellees did not specifically deny appellant's scope of employment allegation, Md.Rule 2–323(e) provides that "[a]verments in a pleading to which a responsive

---

**38.** Appellant's Amended Complaint states the following in paragraph 3: "That at all times stated in this Complaint, the Defendant Donald K. Wood was acting within the scope of his employment with the Chesapeake and Potomac Telephone Company of Maryland."

**39.** Maryland Rule 2–323(e) provides in pertinent part:
 **Effect of Failure to Deny.**—Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damages, are admitted unless denied in the responsive pleading or covered by a general denial. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided....

**46**

pleading is required ... are admitted *unless denied in the responsive pleading or covered by a general denial.*" As appellees' motion to dismiss was granted as to Count I (invasion of privacy) and Count II (portrayal in a false light) of the Amended Complaint, appellant's only remaining claims at the time appellees answered the Amended Complaint were civil conspiracy and violation of the Maryland Wiretap Act. Therefore, because those claims were tort actions for money damages, appellees properly answered with a general denial. Maryland Rule 2–323(d) provides that "[w]hen the action in any count is for ... tort and the claim for relief is for money only, a party may answer that count by a general denial of liability." Therefore, appellees' general denial was sufficient to refute "the whole substance" of appellant's claim, *Maryland Trust Co. v. Poffenberger,* 156 Md. 200, 204, 144 A. 249 (1928), and allowed appellees to "offer any evidence tending to show that [appellant] has no right to recover." *Herrick v. Swomley,* 56 Md. 439, 456 (1881).

 Apparently unaware of the existence of Md.Rule 2–323(g),[40] appellant also suggests that scope of employment is an affirmative defense not raised, and thereby waived, by appellees. Maryland Rule 2–323(g) expressly itemizes affirmative defenses that must be specifically alleged, and scope of employment is not included among them. The two cases cited by appellant both involved affirmative defenses specifically listed in Rule 2–323(g). *See Gooch v. Maryland Mechanical Sys., Inc.,* 81 Md.App. 376, 567 A.2d 954, *cert. denied,* 319 Md. 484, 573 A.2d 807 (1990) (qualified privilege); *Ocean Plaza Joint Venture v. Crouse Constr. Co.,* 62 Md.App. 435, 490 A.2d 252, *cert. granted,* 304 Md. 163, 497 A.2d 1163, *dismissed by*

**40.** Maryland Rule 2–323(g) sets forth those affirmative defenses that must be specifically plead by the defendant. They include: (1) accord and satisfaction, (2) merger of a claim by arbitration into an award, (3) assumption of risk, (4) discharge in bankruptcy or insolvency from the plaintiff's claim, (5) collateral estoppel as a defense to a claim, (6) contributory negligence, (7) duress, (8) estoppel, (9) fraud, (10) illegality, (11) laches, (12) payment, (13) release, (14) res judicata, (15) statute of frauds, (16) statute of limitations, (17) ultra vires, (18) usury, (19) waiver, (20) privilege, and (21) total or partial charitable immunity.

*counsel* (1985) (release and waiver). In contrast, scope of employment is recognized as a fundamental element of a respondeat superior claim that must be affirmatively plead and proved by the plaintiff.

■ Appellant next argues that C & P acted "deceptively" when it raised the issue of scope of employment in a motion for summary judgment, after the close of discovery. Appellant contends that "C & P had a duty under the Maryland Rules to assert [scope of employment] in its answer to the complaint and also to raise the issue immediately after Wood testified in his deposition that the acts were within the scope of his duties." As we explained *supra,* appellees were not required to allege specifically scope of employment (or lack thereof) in their Answer. Moreover, we find no reason to require C & P to raise this issue before the close of discovery. There is no evidence in the record that appellant was "deceived" by C & P's motion for summary judgment on the issue of scope of employment. Indeed, we are unable to empathize with appellant's charge of "deception" when it is obvious from the record that appellant took deposition discovery on the issue of scope of employment. Wood's deposition states:

[COUNSEL FOR APPELLANT]: You were an employee of the C & P Telephone Company at the time, weren't you?

[WOOD]: I was an employee of the C & P Telephone Company, yes, sir, responding to a request of the Hagerstown Police Department.

[COUNSEL FOR APPELLANT]: Okay, and you were responding as a C & P Telephone Company employee, right?

. . . .

[WOOD]: Yes, I was.

[COUNSEL FOR APPELLANT]: You considered this to be part of your job?

[WOOD]: Yes, I did.[41]

We find appellant's challenge on the merits to be equally unpersuasive. Appellant contends (i) that, because Wood testified that he considered the technical assistance he rendered to the police department to be part of his job, summary judgment on the issue of scope of employment was inappropriate and (ii) that the circuit court improperly ruled that criminal acts are outside the scope of employment.

The standard of appellate review of a trial court's grant of a motion for summary judgment is whether the trial court was "legally correct." *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 591, 578 A.2d 1202 (1990). When making a determination on summary judgment, a trial court makes no findings of fact. *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985). Rather, the court decides whether a genuine issue of material fact exists to prevent the entry of summary judgment. *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993); *see also Bond v. NIBCO, Inc.*, 96 Md.App. 127, 135, 623 A.2d 731 (1993); Md.Rule 2–501(e). Under this standard, therefore, we review the trial court's ruling as a matter of law. *Beatty*, 330 Md. at 737, 625 A.2d 1005.

Our cases recognize that a grant of summary judgment is appropriate only where a two-fold test is met. *Gross v. Sussex, Inc.*, 332 Md. 247, 255, 630 A.2d 1156 (1993); *Castiglione v. Johns Hopkins Hosp.*, 69 Md.App. 325, 332, 517 A.2d 786 (1986). The movant for summary judgment must (i) clearly demonstrate the absence of any genuine issue of material fact, and (ii) demonstrate that it is entitled to judgment as a matter of law. *Castiglione*, 69 Md.App. at 332, 517 A.2d 786.

To satisfy the first part of this test, the moving party must present the material facts necessary to obtain judgment and demonstrate that there is no dispute as to any

---

**41.** This deposition testimony was also read into evidence at trial by counsel for appellant.

of those facts. *Bond,* 96 Md.App. at 136, 623 A.2d 721. A material fact is one that will "somehow affect the outcome of the case." *King,* 303 Md. at 111, 492 A.2d 608. It is the burden of the movant to "identify the portions of the record that 'demonstrate the absence of a genuine issue of material fact.'" *Bond,* 96 Md.App. at 136, 623 A.2d 721 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

Once the movant makes this showing, the burden shifts to the non-moving party to identify "with particularity the material facts that are disputed." Md.Rule 2–501(b). Neither general allegations of facts in dispute nor a mere scintilla of evidence will suffice to support the non-movant's position, *Lynx, Inc. v. Ordnance Prods., Inc.,* 273 Md. 1, 7–8, 327 A.2d 502 (1974); *Seaboard Surety Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 243–45, 603 A.2d 1357 (1992); there must be evidence upon which the jury could reasonably find for the non-moving party. *Beatty,* 330 Md. at 738, 625 A.2d 1005 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact") (emphasis in original)). In other words, the opposing party " 'must do more than simply show there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

In ruling on a motion for summary judgment, the court must consider the motion and response submitted by the parties in a light most favorable to the non-moving party. *Id.* at 737, 625 A.2d 1005. Thus, summary judgment is inappropriate where the evidence is susceptible to more than one inference. *Coffey v. Derby Steel Company, Inc.,* 291 Md. 241, 246, 434 A.2d 564 (1981). Furthermore, the non-moving party " 'is to be given the benefit of all reasonable doubts in deter-

mining whether a genuine issue exists.' " *Beatty,* 330 Md. at 739, 625 A.2d 1005 (quoting Charles Alan Wright, *The Law of the Federal Courts* § 99, at 666–67 (1983)).

With these principles in mind, we turn to the facts of the case *sub judice* to consider the trial court's grant of summary judgment.

■■■ The circuit court explained that "Wood's alleged actions in this case were arguably violative of the applicable wiretap statute, a serious crime." Therefore, "[u]nder acceptable agency law, 'serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do.' " [42] Consequently, assuming Wood's intent, in part, to serve C & P's interests, "the evidence before [the] court [was] not legally sufficient to form the basis for a jury finding that Wood's actions were within the scope of his employment with C & P Telephone." We agree with the circuit court that Wood's actions, if violative of the Maryland Wiretap Act, were not within the scope of his employment with C & P.[43]

As explained in *Sheets v. Chepko,* 83 Md.App. 44, 46–47, 573 A.2d 413, *cert. denied,* 320 Md. 800, 580 A.2d 219 (1990):

> The doctrine of respondeat superior allows an employer to be held "vicariously liable for the tortious conduct of an employee when the employee is acting within the scope of the employment relationship." *Dhanraj v. Potomac Elec. Power Co.,* 305 Md. 623, 627, 506 A.2d 224 (1989) (citation omitted). "[T]he test for determining if an employee is acting within the scope of employment is 'whether the servant was advancing his master's interests in doing what he did at the time he did it.' " *Henderson v. AT&T Information Systems,* 78 Md.App. 126, 132, 552 A.2d 935

---

42. The court cited Restatement (Second) of Agency § 231 cmt. a (1958).

43. This conclusion presupposes the notion that if Wood's actions were not violative of the Maryland Wiretap Act, then C & P could not be liable under the doctrine of respondeat superior.

(1989), citing *Rusnack v. Giant Food, Inc.,* 26 Md.App. 250, 261–65, 337 A.2d 445, *cert. denied,* 275 Md. 755 (1975).

Ordinarily, the issue of whether an act is within the scope of the employee's duty while acting in furtherance of his employer's business is to be determined by the jury as a matter of fact and not by the court as a matter of law. In some instances, however, "[w]here there is no conflict in the evidence relating to the question and but one inference can be drawn therefrom, the question is one of law for the court." *Rusnack v. Giant Food, Inc., supra,* 26 Md.App. at 265, 337 A.2d 445 (citation omitted).

▮▮▮ The Restatement (Second) of Agency § 231 cmt. a (1958) provides: "The master can reasonably anticipate that servants may commit minor crimes in the prosecution of the business, but serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do." The general rule is that an employer cannot be held liable for the criminal acts of an employee, unless they were committed during the course of employment and to further a purpose or interest, however excessive or misguided, of the employer. William L. Prosser, *Torts* § 70, at 464–65 (4th ed. 1971); *Nazareth v. Herndon Ambulance Serv., Inc.,* 467 So.2d 1076, 1078 (Fla.Dist.Ct. App.), *petition for review denied,* 478 So.2d 53 (Fla.1985); *see also Sawyer v. Humphries,* 322 Md. 247, 256, 587 A.2d 467 (1991) ("an important factor is whether the employee's conduct was 'expectable' or 'foreseeable' ").

The facts of the case *sub judice* that were before the court *at the time it acted on this motion in September 1992,* viewed in a light most favorable to the non-moving party,[44] support the circuit court's finding. Wood was contacted at home by Ryder after working hours. Wood was told that his assistance was needed with a problem at police headquarters, and was advised that a wiretap was required. When he arrived at

---

44. As we view the facts in a light most favorable to appellant, *Beatty,* 330 Md. at 738, 625 A.2d 1005, we recount these facts as testified to by Ryder during discovery.

police headquarters, Wood was asked by Ryder and Mowen to look at the telephone terminal board in the basement and identify the binding posts associated with an internal extension number. Unable to identify the specified binding posts on the terminal in the basement, Wood went to a second, redundant terminal board on the third floor of the police building. Once Wood identified the extension number, he "hooked up" a tape recorder to the binding post.

Importantly, Wood did not follow established C & P procedures and policy for instituting a wiretap; he received no prior authority from the C & P security office. Indeed, there is evidence in the record that it was Wood's friendship with Ryder and Mowen that motivated him to assist in the alleged illegal wiretap. The Maryland Wiretap Act and the C & P company manual both prohibit the *unauthorized* interception of wire or oral communications. Wood, however, made no inquiry into Ryder and Mowen's authorization to wiretap appellant's telephone extension. Wood's actions, if violative of the Maryland Wiretap Act, constituted a "serious crime" [45] as that term is used in the Restatement (Second) of Agency § 231. C & P, moreover, could not reasonably expect that Wood, while responding to a call from the Hagerstown Police Department, would secretly and wilfully wiretap a telephone extension without proper authorization. Consequently, he was not "advancing [C & P's] interests in doing what he did at the time he did it," *Henderson,* 78 Md.App. at 132, 552 A.2d 935; *see Nazareth,* 467 So.2d at 1078, and therefore acted outside the scope of his employment with C & P. *See, e.g., United States v. Smith,* 810 F.2d 996, 998 (10th Cir.1987) (postal worker was outside the scope of his employment when he illegally opened a package he suspected of containing cocaine), *cert. denied,* 488 U.S. 888, 109 S.Ct. 218, 102 L.Ed.2d 210 (1988); *Carrero v. New York City Hous. Auth.,* 668 F.Supp. 196, 202 (S.D.N.Y.1987) (supervisor who punishes female em-

---

**45.** Under section 10–402(b) of the Maryland Wiretap Act, the interception of wire or oral communications is a felony, punishable by "imprisonment for not more than 5 years or a fine of not more that $10,000, or both." Md.Code Ann., Cts. & Jud.Proc. § 10–402(b) (1994 Supp.).

ployee for illegitimate motive, i.e., sex discrimination, acted outside the scope of his employment); *Hunter v. Countryside Ass'n for the Handicapped, Inc.*, 710 F.Supp. 233, 239 (N.D.Ill. 1989) (alleged sexual assault not within scope of employment); *Bryant v. Brannen*, 180 Mich.App. 87, 446 N.W.2d 847, 853–54 (1989) (landlord not liable under respondeat superior where building manager shot tenant for no apparent reason because building manager not authorized to carry a gun and landlord had no reason to foresee manager's actions), *appeal denied*, 436 Mich. 875 (1990); *Nazareth*, 467 So.2d at 1078 (sexual assault and battery not within scope of employment); *Gotthelf v. Property Management Sys., Inc.*, 189 N.J.Super. 237, 459 A.2d 1198, 1199–1200 (1983) (theft outside scope of employment); *Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 32 (D.C.1979) (violent assault not within scope of employment).

██ To the extent appellant argues that Wood's deposition testimony[46] supports the contention that Wood was acting within the scope of his employment with C & P, we disagree. Wood explained merely that, in going to the police department building, he "was an employee of the C & P Telephone Company ... responding to a request of the Hagerstown Police Department." His conduct once there extended outside the scope of that employment, however, when he allegedly participated in the illegal wiretapping of appellant's telephone extension. We agree with the circuit court that this deposition testimony, by itself, is legally insufficient to overcome appellant's burden to identify with particularity the material facts that are in dispute. Md.Rule 2–501(b).[47]

---

46. *See supra* text accompanying note 43.

47. We carefully point out, however, that our holding here does not foreclose on the long line of cases that establish vicarious liability on behalf of a principal that ratifies the agent's conduct. *See Smith v. Merritt Savs. & Loan, Inc.*, 266 Md. 526, 536–40, 295 A.2d 474 (1972); *Webb v. Duvall*, 177 Md. 592, 596–98, 11 A.2d 446 (1940); *Progressive Casualty Ins. Co. v. Ehrhardt*, 69 Md.App. 431, 441–42, 518 A.2d 151 (1986); 3 Am.Jur.2d *Agency* § 71, at 575 (1986); Restatement (Second) of Agency § 82 (1958). Ratification, however, requires an affirmative act on behalf of the principal, coupled with an intention to ratify, and

*Conflict of Interest*

Appellant also asserts that a conflict existed between the interests of Wood and the interests of C & P when counsel for C & P, also counsel for Wood, argued that C & P was not responsible for Wood's alleged violation of the Maryland Wiretap Act because he was acting outside the scope of his employment. That is the full extent of appellant's argument. With equal concision, we hold that the circuit court was correct in finding no such conflict of interest, a decision best left to the discretion of the trial court. *Peat, Marwick, Mitchell & Co. v. The Los Angeles Rams Football Co.*, 284 Md. 86, 96, 394 A.2d 801 (1978).

Where an alleged conflict of interest exists, the Maryland Rules of Professional Conduct provide:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

Rule 1.7(a). Moreover, the Comment explains that "[a] client may consent to representation notwithstanding a conflict." In the instant case, the record reveals an affidavit from both Wood and C & P, stating that they were apprised of the alleged conflict that could arise concerning C & P's scope of employment defense, and that they consent to the continued joint representation by counsel. Therefore, we agree with the circuit court that any conflict of interest that may have occurred was consented to by the parties.

---

knowledge of all material facts. *Ehrhardt*, 69 Md.App. at 442, 518 A.2d 151; *Linden Homes, Inc. v. Larkin*, 231 Md. 566, 570, 191 A.2d 441 (1963); *Smith*, 266 Md. at 539, 295 A.2d 474. There is no evidence of ratification on behalf of C & P in the instant case.

## VI., VII., VIII. & IX.

We do not reach these issues.

## X.

Finally, appellant contends that the circuit court "demonstrated partiality to [appellees] by issuing contradictory opinions, illogical rulings and refusing to obey" a prior ruling of this Court.

In Maryland, there is a strong presumption that judges are impartial participants in the legal process. *Jefferson–El v. State,* 330 Md. 99, 107, 622 A.2d 737 (1993); *Boyd v. State,* 321 Md. 69, 80, 581 A.2d 1 (1990) (" '[a] judge is presumed to be impartial' " (citation omitted)); *United States v. Sidener,* 876 F.2d 1334, 1336 (7th Cir.1989) (same). To overcome the presumption of impartiality, appellant "must prove that the trial judge has 'a personal bias or prejudice' concerning him or 'personal knowledge of disputed evidentiary facts concerning the proceedings.' " *Jefferson–El,* 330 Md. at 107, 622 A.2d 737 (quoting *Boyd,* 321 Md. at 80, 581 A.2d 1). Mere bald allegations and adverse rulings are insufficient to meet this burden.

There is no evidence, either provided by appellant in his brief or in the record extract before us, indicating that the circuit court judge had any "personal bias or prejudice" towards appellant.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.

## ON MOTION FOR RECONSIDERATION

Our initial opinion in the case *sub judice* was filed on 11 January 1995. *Fearnow v. Chesapeake & Potomac Tel. Co. et al.,* 104 Md.App. at 13, 655 A.2d at 7 (No. 495, September Term 1994). Appellee, Donald K. Wood, filed a motion for reconsideration on 8 February 1995. Appellant, Leon C.

Fearnow, filed a motion for reconsideration on 9 February 1995. Having pleased no one entirely, we approached the motions with a certain ambivalence.

Appellee's motion for reconsideration argued that we had overlooked his previously raised points that the circuit court erred in denying his motion for judgment at the close of all the evidence for two reasons: (1) there was insufficient evidence, as a matter of law, that any telephone conversations of appellant were intercepted by appellee; and (2) there was insufficient evidence, as a matter of law, that appellee acted wilfully.[1] As we find no merit in appellee's arguments for reconsideration, his motion is hereby denied.

Appellant's motion for reconsideration, as we perceive it, argued, among other things, that this Court's affirmance of the trial court's grant of summary judgment in favor of C & P on the issue of respondeat superior was incorrect. Moreover, appellant contended that several issues, not addressed by our prior opinion, must be addressed in order to avoid a "multiplicity of appeals and unnecessary expense." These "unaddressed" issues included: (1) "[d]id the trial court err in quashing certain trial subpoenas and sustaining objections to the use of interrogatory answers by Wood and C & P;" (2) "[d]id the trial court err in granting summary judgment against the plaintiff on the issue of punitive damages by requiring proof of actual malice;" (3) "[d]id the trial court err in granting summary judgment against Fearnow on his claim for damages for reputational injury and resultant emotional distress;" (4) "[d]id the trial court err in denying the plaintiff additional discovery while permitting additional discovery to be reopened by the defendants;" and (5) "[d]id the trial court err in ruling as a matter of law that no conspiracy existed." We find limited merit in appellant's arguments as to questions

---

1. Appellee raised this issue in its brief as an alternative ground for affirmance, and not by cross-appeal. *Glenn v. Morelos*, 79 Md.App. 90, 95, 555 A.2d 1064, *cert. denied*, 316 Md. 427, 559 A.2d 790 (1989).

numbered 2 and 3, *supra.* We briefly explain those merits. Appellant's motion is otherwise denied.[2]

## *Punitive Damages* [3]

In his brief, appellant argued that section 10–410(a) of the Maryland Wiretap Act "is clear and unambiguous ... [and] provides that any person whose communication is intercepted in violation of the act shall have a cause of action against *any person* who violates the act and *be entitled* to recover punitive damages." (Emphasis in the original.) Citing *Franklin Square Hosp. v. Laubach,* 318 Md. 615, 569 A.2d 693 (1990), appellant contended that because "[t]here is no mention of malice in the act nor [sic] in the legislative history of the act," proof of a violation of the Act should entitle appellant to submit the issue of punitive damages to the jury.[4] In addition, appellant drew our attention to the case of *Citron v. Citron,* 539 F.Supp. 621, 624 (S.D.N.Y.1982), *aff'd,* 722 F.2d 14 (2d Cir.1983), *cert. denied,* 466 U.S. 973, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984), in which the federal district court held that "punitive damages must be available once liability has been established." *Id.* at 624 n. 5.

Appellee, however, contended in his brief that "[t]he legislative history of the federal law, with civil liability language virtually identical to that of the [Maryland] Act, explicitly

---

2. We assume that the circuit court will issue a new scheduling order reopening discovery prior to the new trial, and therefore we believe there is no reason to reach the questions highlighted in appellant's motion for reconsideration concerning the discovery issues.

3. This issue was raised by appellant in his brief in the context of the circuit court's grant of appellee's summary judgment motion. Therefore, we shall review, as a matter of law, the need to prove malice to sustain an award of punitive damages. *Franklin Square Hosp. v. Laubach,* 318 Md. 615, 619, 569 A.2d 693 (1990).

4. Appellant also cites *Standiford v. Standiford,* 89 Md.App. 326, 598 A.2d 495 (1991), *cert. denied,* 325 Md. 526, 601 A.2d 1101 (1992) for the proposition that, in a civil wiretap case, "punitive damages were allowed without the showing of malice." It is clear, however, that the issue of punitive damages in *Standiford* was not preserved for appeal. *See id.* at 343–44.

provides that proof of malice is a prerequisite for punitive damages." Without mention of appellant's discussion of *Citron, supra,* appellee asserted that "[n]early every federal court which has ruled on the issue has so held." (Footnote omitted.) Therefore, concluded appellee, we "should be guided by the weight of federal authority."

Section 10–410(a) of the Maryland Wiretap Act provides:

Any person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of this subtitle shall have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use the communications, and be entitled to recover from any person:

(1) Actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(2) Punitive damages; and

(3) A reasonable attorney's fee and other litigation costs reasonably incurred.

Md.Code Ann., Cts. & Jud.Proc. § 10–410(a) (1989 Replacement Volume). Although the legislative history of the Act is silent as to whether a plaintiff must prove malice to sustain a punitive damages award, there are two Maryland Court of Appeals cases that tangentially we find instructive on this issue.

The first case is *Franklin Square Hosp. v. Laubach,* 318 Md. 615, 569 A.2d 693 (1990). In that case, Timothy Laubach and Nancy Laubach, his wife, brought an action against Franklin Square Hospital (Hospital) and others. The action involved the medical treatment of the pregnant Mrs. Laubach, the death of her brain damaged daughter, and the disclosure of "fetal heart monitoring tracings." The complaint alleged that the Hospital had violated the dictates of section 4–

302(b)(1)[5] of the Health–General Article and prayed for compensatory and punitive damages pursuant to section 4–302(d)(2).[6] The jury found for the Laubachs against the Hospital and awarded $300,000 in actual damages and $700,-000 in punitive damages. The Court of Special Appeals affirmed, *Laubach v. Franklin Square Hosp.*, 79 Md.App. 203, 556 A.2d 682 (1989), *aff'd*, 318 Md. 615, 569 A.2d 693 (1990), and the Court of Appeals limited its review to the following question:

> Whether malice is a prerequisite to recovery of punitive damages under Md.Health–Gen.Code Ann. ("HG") § 4–302.

In its search for the answer to this question, the Court went "hunting the ghost of legislative intent." *Franklin Square Hosp.*, 318 Md. at 619, 569 A.2d 693. Stating that "[t]he obvious purpose of the statute is to compel disclosure of medical records under prescribed circumstances, and to attain uniformity by having all facilities bound by the same rules," *id.* at 622, 569 A.2d 693, the Court held:

> Section 4–302(d)(2) declares that if the facility does not disclose a medical record as required, it *"is* liable for punitive damages." (emphasis added). That is, the issue of punitive damages goes to the jury; whether to award those damages is within the jury's discretion. Nowhere in the language of the statute or in its available legislative history is there any indication that the Legislature intended to

---

5. Section 4–302(b)(1) provided:
 (1) Except as otherwise provided in this subsection, a facility shall comply within a reasonable time after a person in interest requests, in writing:
 (i) To receive a copy of a medical record; or
 (ii) To see and copy the medical record.
 Md.Code Ann., Health–Gen. § 4–302(b)(1) (1982 Replacement Volume) (recodified at Md.Code Ann., Health–Gen. § 4–304(a)(1) (1994 Replacement Volume)).

6. Section 4–302(d)(2) provided:
 If a facility refuses to disclose a medical record within a reasonable time after a person in interest requests the disclosure, the facility is, in addition to any liability for actual damages, liable for punitive damages.
 Md.Code Ann., Health–Gen. § 4–302(d)(2) (1982) (codified as amended at Md.Code Ann., Health–Gen. § 4–309 (1994 Replacement Volume & 1994 Supp.)).

impress on the liability for punitive damages a requirement of proof of malice, actual or implied.... To achieve [the uniform disclosure of medical records under prescribed circumstances], no more than a mere refusal to disclose within a reasonable time, upon proper request, whether done maliciously or not, results in liability for punitive damages in addition to actual damages. This is a case where the language of the statute is clearly consistent with its apparent purpose, and not productive of any absurd result. In other words, when the plain language in which the law is couched is considered in the context of the legislative purpose, the legislative intent shines bright and clear.

*Id.* at 622–23, 569 A.2d 693.

In the case *sub judice,* the plain language of section 10–410(a) of the Maryland Wiretap Act is very similar to that of former section 4–302(d)(2) of the Health–General Article. Both sections are devoid of any explicit requirement that the plaintiff prove malice to sustain an award of punitive damages. Also, both sections are similarly couched in the conjunctive, providing for actual damages *and* punitive damages. Their difference, however, lies in the paucity of legislative history relevant to the Maryland Wiretap Act. Absent such "bright and clear" legislative intent as was gleaned by Judge Orth in *Franklin Square Hosp.,* we are unpersuaded in this case to hold that a mere violation of the Maryland Wiretap Act, without a showing of malice, will sustain an award for punitive damages.[7]

---

7. We find support for this conclusion in the current section of the Health–General Article dealing with penalties for refusal to disclose medical records. As codified in the 1994 Replacement Volume & 1994 Supplement, section 4–309(a), formerly section 4–302(d)(2), has abolished the punitive damages provision, and now provides that "[i]f a health care provider knowingly refuses to disclose a medical record within a reasonable time after a person in interest requests the disclosure, the health care provider is liable for *actual damages.*" Md.Code Ann., Health–Gen. § 4–309(a) (emphasis added); *see also Dr. K. v. State Bd. of Physician Quality Assurance,* 98 Md.App. 103, 117, 632 A.2d 453

A more recent and persuasive discussion of the appropriate analytical standard for ascertaining the availability of punitive damages in tort actions is found in *Ellerin v. Fairfax Sav., FSB*, 337 Md. 216, 652 A.2d 1117 (1995).[8] In that case, Fairfax Savings, FSB (Fairfax) filed an action against Charles Ellerin, Louis Seidel, and their wives as personal guarantors of a loan issued by Fairfax and defaulted on by Sherwood Square Associates (of which Ellerin and Seidel were general partners). The guarantors filed counterclaims setting forth tort causes of action for fraud and deceit based on their allegation that Fairfax had obtained post-completion guarantees by fraud. The guarantors demanded $6,000,000 in compensatory damages and $10,000,000 in punitive damages for the fraud.

After a first trial on the merits, the jury returned a verdict in favor of Fairfax. The Court of Special Appeals reversed and granted a new trial, and the Court of Appeals denied a petition for a writ of certiorari. The second trial ended in a hung jury and the case was tried for a third time, with the liability phase of the trial tried separately from the damages phase.

As to liability, the jury found in favor of the guarantors on the fraud count and in favor of Fairfax on the balance due on the loans. At the damages phase, the court told the jury that, while it need not award punitive damages, it could award punitive damages in its discretion. The trial court refused Fairfax's request that the court instruct the jury with respect to the malice required for an award of punitive damages. The court concluded that such an instruction was unnecessary in light of the jury's verdict on liability. "In the court's view, if a plaintiff had established the elements of the tort action, he had necessarily established malice." *Id.* at 226. The jury awarded both compensatory and punitive damages in the fraud

(1993), *cert. denied*, 334 Md. 18, 637 A.2d 1191, *cert. denied*, —— U.S. ——, 115 S.Ct. 75, 130 L.Ed.2d 29 (1994).

**8.** We acknowledge that, at the time the circuit ruled on this issue, *Ellerin* had not been decided.

action. On appeal, the Court of Special Appeals affirmed the compensatory award and vacated the punitive award, "holding that the trial court should have instructed the jury concerning the malice necessary to support a punitive damages award." *Id.* (citing *Fairfax Sav., FSB v. Ellerin,* 94 Md.App. 685, 695–96, 619 A.2d 141 (1993)).

The Court of Appeals, in its discussion of the appropriate standard for an award of punitive damages, explained that, "with regard to most types of tort actions, Maryland law has limited the availability of punitive damages to situations in which the defendant's conduct is characterized by knowing and deliberate wrongdoing." *Id.* 337 Md. at 228, 652 A.2d 1117 (citing *Adams v. Coates,* 331 Md. 1, 13, 626 A.2d 36 (1993); *Komornik v. Sparks,* 331 Md. 720, 725, 629 A.2d 721 (1993); *Owens–Illinois v. Zenobia,* 325 Md. 420, 454, 601 A.2d 633 (1992); *Philadelphia, Wilmington & Baltimore R.R. Co. v. Hoeflich,* 62 Md. 300, 307 (1884)).

Thus, the Court deemed it "appropriate to examine the elements of the tort of fraud or deceit for the purpose of determining to what extent the tort inherently involves the state of mind and conduct which is ordinarily required for the availability of punitive damages." *Ellerin,* 337 Md. at 229, 652 A.2d 1117. The Court acknowledged the two different mental states that are sufficient to commit the tort of fraud or deceit—intentional false representations and reckless disregard for the truth—and held that

the elements of the tort of fraud or deceit in Maryland, where the tort is committed by a defendant who knows that his representation is false, include the type of deliberate wrongdoing and evil motive that has traditionally justified the award of punitive damages.

On the other hand, when a particular fraud or deceit action is based on the alternative form of the knowledge element, namely a "reckless disregard" as to the truth of the representation, the traditional basis for the allowability of punitive damages is not present.

*Id.* at 235, 652 A.2d 1117 (footnote omitted). Therefore, concluded the Court, "reckless disregard" or "reckless indifference" concerning the truth of the representation "falls short of the mens rea which is required to support an award of punitive damages." *Id.*

The reasoning of *Ellerin* is directly applicable to the case *sub judice.* As we explained in our prior opinion:

> To establish liability under the Maryland Wiretap Act, appellant must prove that Wood acted wilfully. The term "wilfully" means "more than intentional or voluntary. It denotes either *an intentional violation or a reckless disregard of a known legal duty.* Indeed, as the federal district court explained in *Earley,* the violator must know that what he or she is doing is illegal.

*Fearnow,* 104 Md.App. at 24, 655 A.2d at 12 (citations omitted; footnote omitted); *see also Hawes v. Carberry,* 103 Md.App. 214, 653 A.2d 479 (1995) (citing *Fearnow, supra* ). The mens rea which is required to violate the Maryland Wiretap Act is remarkably similar to that required to commit the tort of fraud or deceit as explained in *Ellerin, supra.* As in *Ellerin,* there are two mental states that are sufficient to violate the Act—an intentional violation or a reckless disregard of a known legal duty.

Thus we apply the Court of Appeals' reasoning in *Ellerin* to the case *sub judice* and reach a similar conclusion. The mens rea required to violate the Maryland Wiretap Act, where the violation is committed by a defendant who knows that he is violating the Act, includes the type of deliberate wrongdoing and evil motive that has traditionally justified the award of punitive damages. On the other hand, when a particular violation of the Act is based on the alternative form of mens rea, namely a "reckless disregard" as to a known legal duty, the traditional basis for the allowability of punitive damages, i.e. malice, is not present. *See Ellerin,* 337 Md. at 235, 652 A.2d 1117.

Our conclusion here is also in accord with the weight of federal authority interpreting the punitive damages provision

of the federal wiretap statute.[9] We agree with appellee's contention that the legislative history of the federal act "explicitly provides that proof of malice is a prerequisite for punitive damages."[10] *See, e.g., Bess v. Bess,* 929 F.2d 1332, 1335 (8th Cir.1991); *Jacobson v. Rose,* 592 F.2d 515, 520 (9th Cir.1978), *cert. denied,* 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979); *Biton v. Menda,* 812 F.Supp. 283, 285 (D.Puerto Rico 1993). This is not, however, inconsistent with our discussion and application of *Ellerin, supra.* Where a defendant knowingly and intentionally violates the federal act, such conduct would be considered "malicious" so as to justify a punitive damages award pursuant to 18 U.S.C. § 2520(a). *Cf. Ellerin,* 337 Md. at 235, 652 A.2d 1117. On the other hand, where a violator of the federal wiretap statute acts with a "reckless disregard" of a known legal duty, the requisite "wanton, reckless, and malicious" state of mind for allowability of punitive damages is not present.[11] *Cf. id.; e.g., Bess,* 929

---

**9.** We note a difference, albeit inconsequential, between the Maryland Wiretap Act and its federal counterpart in the wording of their respective punitive damages provisions. While the Maryland Act provides for "punitive damages," Md.Code Ann., Cts. & Jud.Proc. § 10–410(a), section 2520(b)(2) of the federal act provides for "punitive damages *in appropriate cases.*" 18 U.S.C. § 2520(b)(2) (1988) (emphasis added).

**10.** 1968 U.S.C.C.A.N. 2196 provides:

Recovery [under the federal act] shall include: (a) actual damages, but not less than liquidated damages at the rate of $100 a day for each day of violation or $1,000, whichever is higher, (b) *punitive damages, where malice is shown,* and (c) a reasonable attorney's fee and other litigation costs reasonable incurred.

S.Rep. No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2196 (emphasis added).

**11.** Appellant draws our attention to the case of *Citron v. Citron,* 539 F.Supp. 621 (S.D.N.Y.1982), *aff'd,* 722 F.2d 14 (2d Cir.1983), *cert. denied,* 466 U.S. 973, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984), ignored by appellee in his brief, to support appellant's contention that a mere violation of the Maryland Wiretap Act, without proving malice, is sufficient to submit the issue of punitive damages to the jury. In *Citron,* the federal district court, interpreting the federal wiretap act, held: "We reject the rule set forth in *Jacobson v. Rose* that an award of punitive damages must be supported by a stronger showing than necessary for compensatory damages." *Id.* at 624 n. 5 (citations omitted).

F.2d at 1335 (where defendant testified that he installed the tape recorder out of a belief that the phone messages left for him at the marital residence were being withheld, conduct not sufficient to warrant punitive damages).

In the instant case, we agree with the circuit court that, at the time appellee's summary judgment motion as to punitive damages was granted (27 October 1992), there was insufficient evidence to support the conclusion that appellee intentionally and deliberately, i.e. maliciously, violated the Maryland Wiretap Act. Therefore, to the extent the circuit court's grant of summary judgment on this issue retains any vitality at the new trial, we affirm the court's decision in that regard. We point out for the circuit court, however, in light of the Court of Appeals's recent decision in *Ellerin*, that its prior pronouncement that "a showing of willfulness is not sufficient to support an award of punitive damages under the statute" may not necessarily remain true if additional relevant facts are adduced. As we discussed *supra*, our bifurcated definition of wilfulness under the Act allows for, in some instances, a showing of wilfulness to be sufficient to warrant an award of punitive damages under the Maryland Wiretap Act.

---

We note, however, that the federal act differs from the Maryland Act in that it provides civil sanctions *only* for actions taken in violation of its penal provisions. *Kratz v. Kratz*, 477 F.Supp. 463, 483 (E.D.Pa. 1979). The *Citron* court apparently relied on this distinction in making its ruling: "If, as this Circuit has ruled, only criminal conduct is covered by the statute, it follows that punitive damages must be available once liability has been established." *Citron*, 539 F.Supp. at 624 n. 5 (citing *Kratz, supra*).

In 1986, however, the punitive damages language of the federal wiretap statute was amended to allow for "punitive damages in appropriate cases." It is for this reason perhaps that we have been unable to discover any subsequent case that reached the same conclusion as *Citron*. Therefore, as the Maryland and federal wiretap statutes are worded differently in this regard, we elect not to adopt the reasoning set forth by the *Citron* court and, instead, apply the bifurcated approach set forth in *Ellerin, supra*, to determine the appropriate standard for the availability of punitive damages under the Maryland Wiretap Act.

### Reputational Damages

In its memorandum and order on appellee's motion for summary judgment concerning appellant's claim for reputational damages, the circuit court found that appellant was not entitled to reputational damages in the instant case for two reasons: 1) "there is no duty imposed on anyone by the wiretap act to safeguard against the publication by others of the circumstances surrounding an alleged wiretap;" and 2) "as a police officer, [appellant] had no protectable interest in preventing publications about the suspicions which prompted the tape recorder incident." We shall discuss each reason in turn.

The Maryland Wiretap Act explicitly prohibits three forms of conduct: 1) the wilful interception of any wire, oral, or electronic communication; 2) the wilful disclosure of the contents of any wire, oral, or electronic communication; and 3) the wilful use of the contents of any wire, oral, or electronic conversation. Md.Code Ann., Cts. & Jud.Proc. § 10–402(a). Appellant, however, does not claim that his reputation was injured by the interception, disclosure, or use of his wire communications. Instead, he claims that the discovery of the tape recorder incident at the Hagerstown Police Department led to disclosure in the press and elsewhere of the circumstances that *prompted* the police to wiretap his telephone extension. As explained by the circuit court, because "the wiretap law imposes no duty to safeguard against disclosing police suspicions about [appellant], and any resulting investigation, [appellant's] claim for injury to reputation and related emotional distress" cannot be sustained under the guise of actual damages proximately caused by a violation of the Maryland Wiretap Act.

Appellant's claim for reputational damages similarly fails under the tort theory of defamation.[12] To recover

---

12. Appellant, throughout this case, has never asserted a defamation cause of action. The discussion of reputational damages in the context of defamation was initiated by appellee in its motion for summary

for defamation, a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; the statement was false; the defendant was legally at fault for making the statement; and, the plaintiff thereby suffered harm. *Rosenberg v. Helinski*, 328 Md. 664, 675, 616 A.2d 866 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3041, 125 L.Ed.2d 727 (1993); *Kairys v. Douglas Stereo Inc.*, 83 Md.App. 667, 678–79, 577 A.2d 386 (1990). Where the plaintiff in a defamation action is a "public figure," he or she must prove by clear and convincing evidence that the allegedly false defamatory publication was made with "actual malice." *Capital–Gazette Newspapers, Inc. v. Stack*, 293 Md. 528, 540, 445 A.2d 1038 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)), *cert. denied*, 459 U.S. 989, 103 S.Ct. 344, 74 L.Ed.2d 384 (1982). Maryland law affords a "qualified privilege," however, to "any person who makes an oral, written or printed report about matters involving violation of the law." *Seymour v. A.S. Abell Co.*, 557 F.Supp. 951, 955 (D.Md.1983) (applying Maryland law).

We agree with the circuit court that *Seymour v. A.S. Abell Co.*, 557 F.Supp. 951 (D.Md.1983) is persuasive in disposing of appellant's claim for reputational damages, couched, as it was, as a defamation action. In *Seymour*, a police officer claimed he had been defamed by publications that disclosed that he had been investigated within the police department. In granting summary judgment to the department, the federal district court explained that Maryland law affords a broad privilege that protects publishing, or causing the publication, of substantially accurate reports about police investigatory activity. *Id.* at 955. The court emphasized that the privilege applies to non-media defendants as well as to media defendants, and encompasses virtually all police investigatory activity, whether it ultimately proves to be well-founded or not:

---

judgment filed 25 March 1993, and perhaps unnecessarily carried forward by the circuit court in its explanation for the grant of that motion. We shall discuss this alternative characterization of appellant's reputational damages claim, however, for the purpose of closure.

> [T]he policy behind the privilege [to publish matters involving alleged violation of law] is that the public's strong interest in receiving information about matters involving violation of the law outweighs the interest of the subjects of defamatory statements at least where the defamatory statements are not made with actual malice. *See Cowley v. Pulsifer,* 137 Mass. 392, 394 (1884) (Holmes, J.). Since the public's interest in receiving the information is just as strong whether the purveyor of the information is a newspaper or some other source, the Court holds that the Maryland privilege applies to all persons who pass on information about matters involving violation of the law.... Although no formal criminal charges were ever filed, the police investigation and administrative charges unquestionably constitute "matters involving violation of the law." *Indeed, most, if not all, police activity concerns matters involving the violation of the law. Simply put, police business is legal business, most especially so when the police investigate and file administrative charges against wrongdoing of their own.*

*Id.* at 955–56 (emphasis added).

The court noted that such communications are also privileged because police officers are "public figures." The court explained:

> "[E]very court that has faced the issue has decided that an officer of law enforcement, from ordinary patrolman to Chief of Police, is a public 'public official' within the meaning of federal constitutional law." The Tenth Circuit explained why even a low ranking police officer is a public official:
>
>> The cop on the beat is the member of the department who is most visible to the public. He possesses both the authority and the ability to exercise force. Misuse of his authority can result in significant deprivation of constitutional rights and personal freedoms, not to mention bodily injury and financial loss. *The strong public interest in ensuring open discussion and criticism of his qualifica-*

*tions and job performance warrant the conclusion that he is a public official.*

*Id.* at 957 (citations omitted) (emphasis added).

In light of the discussion in *Seymour, supra,* it is clear that the circuit court's grant of appellee's summary judgment in the case *sub judice* was proper for two reasons: 1) any information regarding the investigation of appellant that was disclosed or caused to be disclosed by appellee was privileged as "matters involving violation of the law;" and 2) appellant was a "public official" and consequently failed to meet his burden of establishing actual malice on behalf of appellee.

APPELLEE'S MOTION FOR RECONSIDERATION DENIED. APPELLANT'S MOTION FOR RECONSIDERATION GRANTED IN PART AND DENIED IN PART. OPINION FILED ON 11 JANUARY 1995 IS SUPPLEMENTED BY THIS OPINION.